IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**CHARLES RAY "CHUCK" CRAWFORD**                                           **PETITIONER**

**VS.**                                                     **CIVIL ACTION NO.: 3:04CV59-SA**

**CHRISTOPHER B. EPPS, ET AL.**                                             **RESPONDENTS**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on remand from the Fifth Circuit Court of Appeals for further consideration of whether Petitioner was denied his Sixth Amendment right to the assistance of counsel when he was ordered to submit to a psychiatric examination that was later used to discredit his insanity defense at his capital murder trial. *Crawford v. Epps*, 353 F. App'x 977, 983-84, 2009 WL 4324990 at *6 (5th Cir. 2009). This Court initially ordered an evidentiary hearing and allowed the parties to supplement the record with evidence not presented to the Mississippi Supreme Court at the time it adjudicated Petitioner's claim. Having reviewed all of the evidence submitted in this matter, the Court finds that a live evidentiary hearing is unnecessary and concludes that Petitioner is not entitled to habeas relief, for the reasons that follow.

**Facts and Procedural History**

Kristy Ray was abducted from her parents' home on January 29, 1993. On the day Ray was reported missing, Petitioner's family members found a ransom note in their attic and contacted William R. Fortier, an attorney Petitioner retained to represent him on unrelated charges of aggravated assault and rape. Petitioner was scheduled to stand trial on the unrelated charges on

February 2, 1993, in the Circuit Court of Tippah County, Mississippi, with Judge R. Kenneth Coleman presiding. Petitioner had filed a notice of his intent to pursue an insanity defense in those cases, and he submitted to a psychiatric examination at the Mississippi State Hospital on December 23, 1992, just thirty-seven days prior to Ray's abduction. The December evaluation was conducted by clinical psychologist, Dr. Criss Lott, and psychiatrist, Dr. Reb McMichael. (*See* Trial Tr. vol. 10, 1013-14). Following the examination, the doctors concluded that Petitioner was malingering memory deficits, knew right from wrong at the time of the crimes, and was competent to stand trial. (*See* Addendum to Pet. Brief Ex. 12).[1]

Petitioner was out on bond from the aggravated assault and rape charges at the time of Ray's disappearance. After receiving the ransom note and becoming fearful of what Petitioner might do, Fortier contacted law enforcement officials. Petitioner was located and arrested on January 30, 1993, which was a Saturday. Prior to questioning by law enforcement, Petitioner waived his right to counsel. He subsequently confessed involvement in Ray's disappearance and led law enforcement officers to her body. He gave additional statements to law enforcement officials on February 1 and February 2, 1993. Warrants issued for his arrest on capital murder and related charges on Monday, February 1, 1993.

Because of his participation in the events leading to Petitioner's arrest for Ray's murder, Fortier moved to withdraw as counsel in the aggravated assault and rape cases on February 1,

---

[1] For purposes of clarity, the Court advises that the following abbreviations are used throughout this opinion and order: "Pet. Memo," docket entry no. 22, refers to Petitioner's original memorandum brief in support of his petition. "Pet. Brief," docket entry no. 70, refers to Petitioner's brief in support of his arguments following remand. An addendum to the brief, noted as "Addendum to Pet. Brief," is found at docket entry no. 72. Petitioner also filed a supplemental brief, "Pet. Supp. Brief," which is docket entry no. 89, as supplemented in docket entry no. 91.

1993. (*See* Pet. Supp. Brief Ex. A). He asserted that he was operating under a conflict of interest and that there existed "no way that he c[ould] set aside his prejudiced feelings" and properly represent Petitioner due to his belief that Petitioner's involvement in Ray's murder was "cold-hearted, calculated, and premeditated." (*Id*). Before the motion to withdraw was ruled upon, however, Judge Coleman held a hearing on February 1, 1993, without Petitioner present.

At the hearing, the prosecution moved to have the court order another evaluation of Petitioner's sanity and competency in light of his arrest for Ray's murder. Fortier joined the motion. The trial court ordered the immediate examination of Petitioner by the Forensic Services Unit of the Mississippi State Hospital in order to "proceed to trial" in the unrelated aggravated assault and rape cases. (*See* Pet. Mem. Ex. E). The court ordered the examiners to produce a report determining whether Petitioner was "sane and competent to stand trial." (*See* Pet. Brief Ex. 4). Fortier did not speak to Petitioner prior to the psychiatric evaluation. (*See* Pet. Supp. Brief Ex. C).

The evaluation took place the following day, on February 2, 1993. It was conducted by Drs. Lott and McMichael.[2] Petitioner was scheduled to be arraigned on capital murder and associated charges on February 3, 1993, in front of Judge Coleman. (*See* Pet. Mem. Ex. D). On February 4, Fortier was allowed to withdraw his representation of Petitioner on the aggravated assault and rape charges, and James Pannell was substituted as counsel. (*Id.*). Subsequently, Pannell was also appointed as Petitioner's defense counsel in the capital murder case. (*See* Trial

---

[2] Drs. Lott and McMichael completed the examination and testified at a February 11 hearing in the aggravated assault and rape cases. (*See* Pet. Supp. Brief Ex. A, 69). Following the hearing, the court entered an order finding Petitioner competent to stand trial on the charges of aggravated assault and rape. (*Id.*).

3

Tr. vol. 8, 670). Although the exact timing of his appointment is unknown, the record clarifies that Pannell, like Fortier, did not have any contact with Petitioner prior to the February 2 psychiatric examination. (*See* doc. entry no. 107, Aff. of James Pannell).

Little of record happened in Petitioner's capital murder case until after both the aggravated assault and rape cases went to trial. James Pannell served as Petitioner's counsel in both of the unrelated cases, and Judge Coleman presided over both trials. Petitioner stood trial for the aggravated assault charge in May 1993. Petitioner presented an insanity defense in that case, and the State offered the testimony of Drs. Lott and McMichael in rebuttal. *See Crawford v. State*, 787 So. 2d 1236 (Miss. 2001). Petitioner was found guilty of aggravated assault and sentenced to a term of imprisonment of twenty years. (*Id*. at 1238). After the assault trial ended, Petitioner stood trial on the unrelated charges of rape and kidnapping in August 1993. Although he was acquitted of kidnapping, he was sentenced to imprisonment for forty-six years on the charge of rape, which was to run consecutive to his sentence for aggravated assault. (*See* Supp. to Pet. for PCR Ex. 4, Aff. of James W. Pannell; *see also* SCR vol. 1, 13).

Petitioner was indicted for capital murder in September of 1993. (*See* SCP vol. 1, 11-13). David Bell was appointed as co-counsel to assist Pannell. In January 1994, Petitioner filed a notice to pursue an insanity defense to the capital murder and related charges. The capital murder trial occurred in April 1994 and was also presided over by Judge Coleman. At trial, Petitioner presented the testimony of Dr. Stanley Russell, a psychiatrist with the Mississippi Department of Corrections, who testified that Petitioner suffered from depression and psychogenic amnesia, a dissociative disorder characterized by long periods of time for which the sufferer has no memory. (*See* Trial Tr. vol. 9, 822-26). Dr. Russell disagreed with the diagnosis

4

of Bipolar Disorder that Petitioner had been given during a prior hospitalization but otherwise opined that Petitioner lacked criminal responsibility for his actions at the time of the murder. (*See id.* at 827-31, 845). Petitioner's family members also testified in his defense, and they all stated that Petitioner had suffered mental illness almost all of his life. (*See* Trial Tr. vol. 9, 893-900; Trial Tr. vol. 10, 901-997).

In rebuttal to Petitioner's insanity defense, the State presented the testimony of psychologist Dr. Criss Lott. At the time Dr. Lott testified at Petitioner's capital murder trial, he had evaluated Petitioner on four separate occasions in connection with the rape/assault and capital murder charges against Petitioner. (*See* Trial Tr. vol. 10, 1002-14). Dr. Lott disagreed with Dr. Russell's diagnosis of psychogenic amnesia and opined that Petitioner's recurring loss of memory represented a "selective deficit" that appeared only during a criminal offense. (*See id.* at 1013-16). Dr. Lott further offered an opinion that Petitioner's behavior prior to, during, and after the offense indicated premeditation, and that Petitioner did not suffer a mental illness, but rather, a character pathology of antisocial, violent, aggressive, and potentially sexually predatory behavior. (*Id.* at 1017, 1023, and Trial Tr. vol. 11, 1056). Psychiatrist Dr. Reb McMichael, the director of the Forensic Sciences Unit at the Mississippi State Hospital, also testified in rebuttal to the defense's case-in-chief. Dr. McMichael also opined that Petitioner was malingering the symptoms of psychogenic amnesia, and he agreed that Petitioner's behaviors prior to and following the crime suggested that Petitioner knew his behavior was wrong. (*See* Trial Tr. vol. 11, 1066-72). The closing arguments of both the defense and prosecution centered around Petitioner's alleged insanity. (*See id.* at 1177-1200; Trial Tr. vol. 12, 1201-06). Petitioner was found guilty of capital murder.

At the sentencing phase of trial, defense counsel called nine family members to give testimony and also offered the expert testimonies of Dr. Martin Webb and Dr. Stanley Russell. (*See* Trial Tr. vol. 12, 1247-1305). Dr. Webb, a psychiatrist in private practice hired by Petitioner's family members approximately one year prior to trial, testified that he believed Petitioner suffered from Bipolar Disorder and lacked criminal responsibility at the time of the crime. (*See id.* at 1281-86). Dr. Russell testified that Petitioner was operating under extreme duress and emotional disturbance at the time of the crime and lacked criminal responsibility for it. (*Id*. at 1293-94).

The prosecution called Dr. McMichael to offer rebuttal testimony at sentencing. Dr. McMichael opined that Petitioner suffered from no mental illness that would serve to reduce his responsibility for the crimes committed, and he stated that the records made around the time of the offense did not describe someone in a manic episode. (*Id.* at 1308-09). Following closing arguments, Petitioner was convicted of all counts and sentenced to death.

The Mississippi Supreme Court affirmed the sentence and conviction on direct appeal on March 12, 1998. *See Crawford v. State*, 716 So. 2d 1028 (Miss. 1998), *cert. denied*, 525 U.S. 1021 (1998). On post-conviction review, Petitioner argued that his court-ordered psychiatric evaluation was an interrogation in violation of his right to counsel. The Mississippi Supreme Court stated:

> Crawford argues that he was entitled to counsel's assistance in making his decision as to whether or not to submit to testing and to what extent the tests should be performed. However, the cases he cites involve situations whether there either was no counsel at the time of the examination or counsel was given no notice of the examination. Crawford alleges neither and it is apparent that counsel, at the very least, had notice of the fact that the examination would take place as he signed off on the examination order. Crawford does not argue that

>counsel did not have notice of the examination or its scope, but simply that he did not confer with counsel. Notwithstanding the lack of any supporting evidence, Crawford's claim appears better suited as one for ineffective assistance, for it is clear that the State upheld its end of the bargain and his argument is without merit.

*Crawford v. State,* 867 So. 2d 196, 205 (2003). All of Petitioner's claims raised in his post-conviction application were denied on December 4, 2003. *See Crawford v. State*, 867 So. 2d 196 (Miss. 2003), *cert. denied*, 543 U.S. 866 (2004).

On federal habeas review, Petitioner argued that Fortier extended his representation of Petitioner to the murder case by signing off on the circuit court's order that he undergo a psychiatric evaluation in the aggravated assault/rape cases. He alternatively argued that he was entitled to the assistance of counsel before submitting to an evaluation that the State later used to discredit his insanity defense. (Pet. Mem. 17-18). This Court denied Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 on September 25, 2008. *Crawford v. Epps*, 2008 WL 4419347 (N.D. Miss. Sept. 25, 2008). The Court denied Petitioner a Certificate of Appealability ["COA"] on his Sixth Amendment claim, finding that the record made it clear that the examination was ordered in a separate case and necessitated by Petitioner's arrest for murder. *Crawford v. Epps*, 2008 WL 5095993 at * 2 (N.D. Miss. November 25, 2008). Petitioner appealed to the Fifth Circuit Court of Appeals seeking a COA on eighteen separate claims.

The Court of Appeals affirmed the dismissal of all of Petitioner's claims except his claim that his Sixth Amendment rights were violated by the trial court's order that he be subjected to a psychiatric evaluation without the benefit of counsel. *Crawford v. Epps*, 353 Fed.Appx. 977 (5th Cir. 2009). In granting a COA on this claim, the Fifth Circuit noted that because Kristy Ray's murder had already been committed at the time the evaluation was ordered, it was foreseeable

that the results of the evaluation would be relevant to any future murder trial. *See id*. The Fifth Circuit determined that "[t]he relevance of Fortier's participation to Crawford's Sixth Amendment claim was not adequately briefed. Further, the effect of Crawford's waiver of his Sixth Amendment right to counsel, discussed *supra*, and whether that waiver would extend to any decision to submit to a psychiatric evaluation were issues not adequately explored by the briefs." *Id.* at 984. The Court of Appeals vacated this Court's decision as to Petitioner's Sixth Amendment claim and remanded the case for further consideration. *Id.* at 983-84.

## Law and Analysis

The Court's review of Petitioner's claim is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), because his federal habeas petition was filed after the statute's effective date. *See Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA prevents the grant of federal habeas relief on any claim adjudicated on the merits in state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the presented evidence. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

In its post-conviction decision, the Mississippi Supreme Court stated that Petitioner did not allege that he was without counsel or that counsel had no notice of the fact of the evaluation at the time it was ordered. *See Crawford v. State*, 867 So. 2d. at 205. In his post-conviction pleadings, however, Petitioner alleged that Fortier extended the scope of his representation of Petitioner when he signed off on the February evaluation order, and that even if Fortier did not extend his representation, Petitioner was entitled to the assistance of counsel because the

8

evaluation represented a "critical stage" of the capital murder prosecution. (*See* Petition for Post-Conviction Collateral Relief Incorporating Memorandum of Law ¶49, ¶52). It appears to the Court that the State court misapprehended or disregarded the aspect of Petitioner's claim that asserted a right to the appointment of counsel due to the separate murder charge, and that the court failed to adjudicate the claim as presented. Therefore, the statutory restrictions on factual development that would otherwise be applicable, as well as the deferential lens through which this Court would otherwise review Petitioner's claim, do not apply to the instant inquiry. *See, e.g., Gonzalez v. Thaler*, 643 F.3d 425, 429-30 (5th Cir. 2011); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009) (holding that AEDPA deference does not apply if the state court is properly presented a claim and does not adjudicate the particular claim on the merits); *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-1401 (2011) (holding that "review under 2254(d)(1) is limited to the record that was before the state court *that adjudicated the claim on the merits*") (emphasis added).

  The Court is aware, however, that "adjudication on the merits" has been found to refer "to whether a court's disposition of the case was substantive as opposed to procedural." *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002). Therefore, the Court concludes that, to the extent AEDPA standards are applicable to the rejection of Petitioner's Sixth Amendment claims, Petitioner has demonstrated by clear and convincing evidence that he did argue to the Mississippi Supreme Court that he was without counsel during a "critical stage" at the time of the February evaluation, thereby rebutting the finding that he made no such argument. *See* 28 U.S.C. § 2254(e)(1). Because this particular factual determination is critical to the complete resolution of Petitioner's Sixth Amendment claim, the Court concludes that the Mississippi Supreme Court's

9

decision was "based on an unreasonable determination of the facts" in light of the presented arguments, and it finds that AEDPA deference is not appropriate. *See* 28 U.S.C. § 2254(d)(2); *see also Blue v. Thaler*, 665 F.3d 647, 654 (5th Cir. 2011) (finding § 2254(e)(1) to pertain to particular factual issues while (d)(2) applies "to the state court's decision as a whole").

A review of all of the evidence adduced in this matter shows that, at the time the trial court held a hearing on February 1 in the aggravated assault and rape cases, Petitioner was in police custody, had confessed an involvement in Ray's death, and warrants had issued against him for that involvement. The evidence also shows that Petitioner was not present at the hearing where the issue of a subsequent psychiatric examination was discussed, and it shows that Fortier had already moved to withdraw his representation in the aggravated assault and rape cases at the time the examination was ordered. (*See* Pet. Supp. Brief Ex. C, D). During the evaluation itself, Petitioner stated that he was unrepresented on the capital murder charge that had been filed against him, and he maintained that he could not afford to retain Fortier's representation to contest the charges. (*See* Pet. Brief Ex. 6).

The state sponsored psychiatric examination of a defendant represents a "critical stage" of the proceedings against him or her, and defense counsel must be given prior notification of the nature and scope of the examination and given an opportunity to consult with the defendant about the uses to which the examination may be put. *See Estelle v. Smith*, 451 U.S. 454, 460-72 (1981); *Buchanan v. Kentucky*, 483 U.S. 402, 424-25 (1987); *Satterwhite v. Texas*, 486 U.S. 249, 251 (1988). This Sixth Amendment right to counsel, incorporated and applicable to the states through the Fourteenth Amendment, guarantees that a criminal defendant has the opportunity to make a considered judgment about whether to cooperate and waive his Fifth Amendment

privilege against self-incrimination during a psychiatric examination. *Smith*, 451 U.S. at 470-71.

Petitioner had not yet been indicted, arraigned, or appointed counsel in the capital murder case at the time of the February 2 evaluation.[3] However, on February 1, the trial judge, the prosecutor, and Fortier were all aware that Petitioner intended to pursue an insanity defense to the charges of aggravated assault and rape. Petitioner's defense counsel on the unrelated charges, Fortier, admitted prior to the February 1 hearing that there was "no way that he c[ould] set aside his prejudiced feelings" and represent Petitioner due to his belief that Petitioner murdered Kristy Ray while legally sane. (*See* Pet. Brief Ex. 8). The trial court was aware of Fortier's conflict, and Fortier admits that he had no contact with Petitioner between the time of his arrest for murder and the February psychiatric examination, thereby rebutting any presumption that an opportunity for consultation occurred between them. *See Buchanan*, 483 U.S. at 425 (finding the right to counsel not violated where counsel joined in State's motion to obtain evaluation and it could be assumed counsel consulted with defendant). Therefore, Fortier's representation of Petitioner on the unrelated charges could not have served to adequately protect Petitioner's rights in the instant case.

Moreover, the Sixth Amendment right to counsel is offense specific. *See Texas v. Cobb*, 532 U.S. 162, 168 (2001). Because the February evaluation was only ordered in light of

---

[3] *See Smith*, 451 U.S. at 469 (noting defendant had been indicted and appointed counsel on the charge relevant to the examination); *Powell*, 492 U.S. 680 (1989) (finding Sixth Amendment violation when psychiatric examination ordered on day of Powell's arrest was performed without notice to him or his attorney) and *Powell v. State*, 742 S.W.2d 353, 357 (Tex.Cr.App. 1987) (noting Powell was arraigned and appointed counsel on day of his arrest and indicted before examination occurred); *Satterwhite v. Texas*, 486 U.S. 249, 254 (1988) (noting defendant had been indicted, arraigned, and appointed counsel before relevant examination occurred).

Petitioner's arrest for capital murder, the Court finds that Petitioner was entitled to the opportunity to consult with an attorney about the possible future uses of the results of the examination. *See, e.g., Smith*, 451 U.S. at 471; *Penry v. Johnson*, 532 U.S. 782, 794 (2001) (distinguishing a claim raised in the context of the Fifth Amendment from the holding in *Smith*, in part, by noting that the defendant in *Penry* had not yet murdered the victim at the time of the psychiatric evaluation); *see also Crawford v. Epps*, 2009 WL 4324990 at **5-6 (citing *Penry* and noting that it was "foreseeable that [Petitioner's] mental state could be placed at issue during any ensuing capital murder trial"). Therefore, the Court concludes that the examination constituted a "critical stage" in the capital murder case for Sixth Amendment purposes, and Petitioner was entitled to "the guiding hand of counsel" before being compelled to submit to the February psychiatric interview. *Smith*, 451 U.S. at 471.

Neither does the Court find it of constitutional significance to the issue before it that Petitioner waived his right to counsel prior to cooperating with police questioning regarding Kristy Ray's murder. While Petitioner's waiver of his *Miranda* rights prior to cooperating with police served to waive his Sixth Amendment right to counsel during police questioning,[4] the Court finds that waiver insufficient to waive his right to consult with counsel prior to the February psychiatric evaluation. In *Powell v. Texas*, 492 U.S. 680, 684-85 (1989), the Court stated that "[n]o mention of waiver is contained in [*Smith* or *Buchanan*] discussing the Sixth Amendment right. This is for good reason. While it may be unfair to the state to permit a defendant to use psychiatric testimony without allowing the state a means to rebut that testimony,

---

[4] *See, e.g., Montejo v. Louisiana*, 556 U.S. 778, 786-87 (2009) (valid waiver of *Miranda* rights also waives Sixth Amendment right to counsel).

it certainly is not unfair to require the state to provide counsel with notice[.]" Petitioner was not present at the February 1 hearing where the examination was ordered. He was not notified of its existence by Fortier, who had already moved to terminate his attorney-client relationship with Petitioner. He was not appointed new counsel prior to the examination.

Undoubtedly, the trial judge had an obligation to satisfy any new doubts as to Petitioner's competency that were raised by Petitioner's intervening criminal acts. *See, e.g., Pate v. Robinson*, 383 U.S. 375, 385 (1966) (holding that trial court must order competency hearing where information raises "a bona fide doubt" as to the defendant's competency to stand trial). However, with no attorney appointed to represent him on the capital murder charge and an uncommunicative and admittedly conflicted counsel representing him on the aggravated assault and rape charges, Petitioner was left without any legal advice as to whether he should submit to the February psychiatric evaluation. Therefore, the Court finds that Petitioner had a right under the Sixth Amendment to consult with counsel prior to the February 2 psychiatric evaluation, and that he was denied that right.

Despite finding a constitutional violation in this case, however, the Court still must consider whether the error was harmful. A constitutional error is harmless unless it has a "substantial and injurious influence or effect" on the verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (holding that harmless-error standard applies in determining whether habeas relief is warranted because of constitutional error); *Satterwhite v. Texas*, 486 U.S. 249, 257 (1989); *Vanderbilt v. Collins*, 994 F.2d 189, 198-99 (5th Cir. 1993) (holding that *Brecht*

13

standard applies to *Smith* errors)[5]; *see also Fry v. Pliler*, 551 U.S. 112 (2007) (holding that harmless error standard in *Brecht v. Abrahamson,* 507 U.S. 619 (1993) applies even in absence of harmless error review).[6]

The Court is aware that it is the accused's opportunity to consult with counsel, and not the subsequent use of the evaluation, that is the concern of the Sixth Amendment. *See, e.g. Buchanan*, 483 U.S. at 424-25 (holding that it is the "consultation with counsel" that is the "proper concern of [the Sixth] Amendment"); *Powell v. Texas*, 492 U.S. 680, 685 and n.3 (1989). A consideration of the Supreme Court precedent that guides the present inquiry, however, demonstrates that circumstances surrounding the use of the results are relevant to a determination of the prejudice caused by the violation. Upon the distinct facts of this case, the Court finds any Sixth Amendment violation in this case harmless, for the following reasons.

First, psychiatric evidence was presented by the State only in rebuttal to Petitioner's insanity defense. No psychiatric evidence was offered against Petitioner during the State's case-

---

[5] Ordinarily, the complete absence of counsel at a "critical stage" would warrant a presumption of prejudice under *United States v. Cronic*, 466 U.S. 648 (1984). In *Satterwhite v. Texas*, 486 U.S. 249 (1988), the Court noted that when the prejudice from a Sixth Amendment violation like that in *Estelle v. Smith* was "limited to the admission into evidence of [the mental health] testimony," a harmless error analysis applies. *Satterwhite*, 486 U.S. at 257. As the alleged prejudice in this case stemmed only from the testimony of Drs. Lott and McMichael, and the Court finds a harmless error standard appropriate under the facts of this case.

[6] Petitioner maintains that the "mandate rule" prohibits this Court's consideration of harmless error because Respondents did not raise the issue on appeal. The mandate rule, "which is but a specific application of the general doctrine of law of the case[,] . . . 'provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court.'" *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002) (citation omitted). Because it is an applicable constitutional doctrine, rather a mere argument raised by Respondents for the first time on remand, the Court finds harmless error review appropriate in this case.

in-chief during either portion of the trial. While the assertion of an insanity defense does not waive the Sixth Amendment right to notice to counsel, it does alert the defense that psychiatric evidence may be presented in rebuttal. *See, e.g., Buchanan*, 483 U.S. at 424-25 (finding that after *Estelle v. Smith*, the defense has to anticipate the use of psychological evidence in rebuttal if a "mental status" defense is offered). It is also noteworthy that Drs. Lott and McMichael conducted two additional mental status evaluations between the contested February evaluation and Petitioner's capital murder trial, and both of these evaluations occurred while James Pannell was representing Petitioner. (*See, e.g.*, Trial Tr. vol. 10, 1018-19). Drs. Lott and McMichael had previously testified to rebut Petitioner's insanity defense in his unrelated aggravated assault case, thereby alerting Petitioner in advance not only of the fact, but also of the likely substance, of the rebuttal testimony that could be offered against him at his capital murder trial if he pursued an insanity defense.

Also, the Court finds it significant that the psychiatric examination in Petitioner's case did not result in psychiatric testimony on an issue for which the State bore the burden of proof. *Smith*, *Powell*, and *Satterwhite* all involved the Texas death penalty scheme, which requires the state to affirmatively prove a defendant's future dangerousness before the death penalty may be imposed. *See Smith*, 451 U.S. at 470-71; *Powell*, 492 U.S. at 681-82 & n.1; *Satterwhite*, 486 U.S. at 254; *see also Rivera v. Collins*, 934 F.2d 658, 662 (5th Cir. 1991). In *Satterwhite*, the Court phrased *Smith* to hold that "defendants formally charged with capital crimes have a Sixth Amendment right to consult with counsel before submitting to psychiatric evaluations designed to determine their future dangerousness." 486 U.S. at 251. In this case, Petitioner was examined for competency and sanity in an unrelated case, and the expert testimony offered at trial went

only to rebut the testimony introduced by Petitioner.

In its opinion remanding this case, the Fifth Circuit cited *Penry v. Johnson*, 532 U.S. 782, 886-88 (2001), where the Supreme Court declined to grant habeas relief on a Fifth Amendment challenge to the introduction of a prior psychiatric examination used in a defendant's later capital murder trial. The Supreme Court noted that the state did not have a duty to warn a defendant about the possible future uses of the interview where use cannot be foreseen. *Penry*, 532 U.S. at 794. The Fifth Circuit here found *Penry* instructive because the Supreme Court noted that Penry's capital crime had not yet been committed when the earlier examination took place, while Petitioner had already committed capital murder at the time of the February evaluation. The Court notes that, unlike Penry, however, Petitioner was specifically warned prior to the February evaluation that the report generated as a result of the examination would be disclosed, and he was reminded "of his right not to say anything which might incriminate him in a court of law." (Pet. Brief Ex. 6, 2). While this determination does not negate the fact that Petitioner was not appointed counsel in the capital murder charge to advise him prior to the evaluation, it does speak to Petitioner's awareness that he would give up certain rights by cooperating with the examiners.

In light of the distinctions between Petitioner's case and those cited above, the Court finally considers the impact that the uncounseled examination had on Petitioner's ability to present a defense at trial. As an initial matter, the Court notes that the examiners had only received "a very brief verbal description of the new crime" and were not in possession of any of statements from Petitioner or law enforcement personnel with regard to the murder at the time of the February evaluation. (*See* Pet. Mem. Ex. F). During the evaluation itself, the examiners were

able to conclude that Petitioner "was able to describe his mental state and almost all of the facts occurring at the time of his most recent alleged offenses." (Pet. Brief Ex. 6). They noted that during the interview, Petitioner did not recount details of his activities around the time Kristy Ray was murdered but reported memory deficits "for brief periods of time when he is alleged to have first apprehended the victim and when he is alleged to have killed her." (*Id*.). At trial, Dr. Lott testified that on February 2, 1993, Petitioner "detail[ed] the events of the day and of his behavior up to a point and then . . . [had] a brief lapse of memory." (Trial Tr. vol. 10, 1015-16). The only mental health evidence offered by the State in rebuttal at sentencing was that of Dr. McMichael, who testified that Petitioner was not in a manic state at the time of the February evaluation, and that he should have been if he had been in such a state at the time of Ray's murder. (*See* Trial Tr. vol. 12, 1308). The examiners could not have made these findings if the February examination had not occurred, and Petitioner urges the Court to find error based on the fact that these findings were made almost contemporaneously with the crime.

However, Petitioner's argument omits the record evidence that independently supports the conclusions Drs. Lott and McMichael testified to at trial. *See, e.g., Murray v. United States,* 487 U.S. 533, 537 (1988) (holding evidence illegally obtained admissible if it has an "independent source"); *see also Kansas v. Ventris*, 556 U.S. 586, 129 S. Ct. 1841, 1845 (2009) (noting that evidence obtained in violation of the Sixth Amendment is not per se inadmissible but is subjected to "an exclusionary-rule balancing test"). Upon review of the record as a whole, the Court is of the opinion that there was an abundance of evidence available to the examiners that influenced the opinions they formed as to Petitioner's mental status, and that their conclusions would have been essentially the same even if the information they learned as a result of the

February evaluation was altogether omitted.

As previously noted, Petitioner was examined by Drs. Lott and McMichael four times between December 1992 and the capital murder trial at issue. (Trial Tr. vol. 10, 1012-14, 1026-27). Petitioner's December evaluation in the aggravated assault case was conducted with the approval and knowledge of counsel, and an insanity defense had been raised in that case. After the February interview, and prior to the capital murder trial in this case, two additional psychiatric evaluations of Petitioner were conducted by the same doctors who would later testify at Petitioner's capital murder trial. (Trial Tr. vol. 10, 1018-19). There is no challenge raised to the fact or scope of these other three examinations, nor is there a challenge implied to the information learned as a result of them. Moreover, the clinical opinions reached as a result of the February interview are essentially the same as those reported in December, as the doctors "again" provisionally diagnosed Petitioner with malingering and Personality Disorder, Not Otherwise Specified, with Antisocial, Explosive, and Dependent Features. (*See* Pet. Mem. Ex. 6; Addendum to Pet. Brief Ex. 12).

The expert testimony offered at Petitioner's capital murder trial contained a wealth of information considered outside of the February interview, and much of it included the experts' responses to the testimony given by others at trial. Dr. Lott's testimony makes it apparent that he considered the testimony of Dr. Russell, the records of other experts and the East Mississippi State Hospital, the testimony of the lay witnesses who testified at trial, and his own evaluations of Petitioner in reaching his clinical opinions. (*See* Trial Tr. vol. 10, 1003-29). Particularly, Dr. Lott found the FBI's investigatory report "extremely important" to his diagnosis and trial testimony. (*Id.* at 1060). Dr. Lott was not aware of the details of the crime at the time of the

18

February evaluation, and he testified that his diagnostic impression of Petitioner had developed over the course of a year and half since his arrest and the capital murder trial. (*Id.* at 1029). Similarly, Dr. McMichael's clinical opinion was influenced by information obtained from numerous sources, and he, too, found the FBI report to be very important to an evaluation of Petitioner's awareness of his conduct. (*See* Trial Tr. vol. 11, 1065-72). The majority of Dr. McMichael's testimony in rebuttal at sentencing was responsive to the testimony given by Drs. Russell and Webb. (*See* Trial Tr. vol. 12, 1307-10).

The Court also finds that Petitioner's history of feigning memory problems is contained in his medical records, and the expert testimony offered by the experts in this case contains opinions partially formed upon their review of police reports, their consideration of the trial testimony, and Petitioner's family history, none of which are related to the February evaluation. The uncontested psychiatric evaluations, the expert opinions as to Petitioner's premeditation on the basis of the evidence, and the expert opinions as to the credibility of Petitioner's experts were all admissible in this case, notwithstanding the February 2 interview.

Under these distinct facts, the Court concludes that any Sixth Amendment violation that occurred as a result of the State's failure to appoint counsel in the capital murder case to advise Petitioner prior to the February 2 examination did not have "a substantial and injurious influence or effect" on the verdict in this case. *See Brecht*, 507 U.S. at 637. Therefore, the Court finds that any error resulting from the February 2 psychiatric evaluation is harmless.

## Certificate of Appealability

Petitioner must obtain a certificate of appealability ("COA") before appealing this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless

Petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which Petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying this standard, the Court grants Petitioner a COA on his Sixth Amendment claim.

## Conclusion

Having found that Petitioner's Sixth Amendment claim does not warrant habeas relief, it is hereby ordered that the instant petition for a writ of habeas corpus be **DENIED** and **DISMISSED WITH PREJUDICE**. A certificate of appealability is **GRANTED**. All pending motions are dismissed as moot. A judgment in accordance with this opinion and order will issue this day.

**THIS** the 29th day of August, 2012.

/s/ Sharion Aycock
**U.S. DISTRICT JUDGE**